# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAVIER GALDEAN,

        Plaintiff,

vs.                                                      No. CIV 01-0069 LH/LCS

LARRY G. MASSANARI,
ACTING COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 9), filed August 27, 2001. The Commissioner of Social Security issued a final decision denying Plaintiff's application for supplemental security income. The United States Magistrate Judge, having considered the Motion, memoranda, administrative record, and applicable law, finds that the motion is not well-taken and recommends that it be **DENIED**.

## PROPOSED FINDINGS

1.      Plaintiff, now forty-four years old, filed an application for disability insurance benefits on February 8, 1988, alleging disability since July 18, 1985 due to a back injury. (R. at 141-163.) Plaintiff's application was denied at the initial level and he did not appeal. (R. at 144; 163.) Plaintiff filed applications for disability insurance benefits and supplemental security income in June 1990, alleging disability since July 18, 1985 due to a "bad back." (R. at 64; 70.) After the Commissioner issued a final decision denying these applications at step five, Plaintiff appealed to this Court. In 1995, this Court affirmed the decision of the Commissioner. *Galdean v. Chater*, CIV 92-217 JP/DJS;

(R. at 377-387.)  Plaintiff appealed.  The Tenth Circuit affirmed.  *Galdean v. Chater*, 1996 WL 23199 (10th Cir. Jan. 23, 1996.); (R. at 556-557.)

2.        While his prior case was pending before this Court, Plaintiff filed his current application for supplemental security income[1] on March 23, 1992, alleging disability commencing in July 18, 1985 due to a bad back.  (R. at 259-265.)  At the time he filed the application at issue, Plaintiff was thirty-four years old.  (*Id.*)  He has an eighth grade education from Mexico and past relevant work was as a construction worker.  (R. at 114.)

3.        Plaintiff's current application was denied at the initial level on May 15, 1992 (R. at 267-268), and at the reconsideration level on June 25, 1992.  (R. at 273-274.)  Plaintiff appealed the denial of his claim by filing a Request for Hearing by Administrative Law Judge (ALJ) on July 16, 1992.  (R. at 277.)  ALJ Carol Connor held a hearing on October 5, 1993, at which Plaintiff appeared and was represented by counsel.  (R. at 388.)  At the hearing, Plaintiff, a medical expert and a vocational expert testified. (*Id.*)

4.        ALJ Connor issued a decision on June 15, 1994, finding that Plaintiff was not disabled at step five of the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993).  (R. at 238-49.)  The Appeals Council denied Plaintiff's request for review on September 21, 1995.  (R. at 233-235.) Plaintiff appealed to this Court, and the Commissioner filed an unopposed motion to remand to further develop the record regarding Plaintiff's mental impairments.  (R. at 523-527.)  On September 19, 1996, this Court issued a stipulated order remanding the case to the Commissioner to conduct a step five inquiry into (1)

---

[1]  Plaintiff withdrew his request for a hearing on his application for disability insurance benefits filed March 23, 1992.  (R. at 249.)

2

Plaintiff's mental status in order to further assess Plaintiff's capacity to perform other work, and (2) to determine the impact of Plaintiff's sub-standard English skills on performing other jobs. *Galdean v. Chater*, CIV 95-1361 JP/WWD; (R. at 528.)

5.      On remand, Anthony C. Traweek, Ph.D. performed a psychological consultative examination on September 17, 1997. (R. at 543-549.) Additionally, ALJ Connor held a second evidentiary hearing on February 18, 1998. (R. at 461.) Plaintiff appeared and was represented by counsel. (*Id.*) A Spanish interpreter was available, but was not needed. (R. at 461; 468.) Plaintiff and Mr. Ken Williams, a vocational expert (VE), testified. (*Id.*)

6.      On March 18, 1998, ALJ Connor issued a decision, finding that Plaintiff was not disabled at step five of the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993). (R. at 446-59.) At the first step of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. at 450.) At the second step, the ALJ determined that Plaintiff had severe impairments consisting of depressive disorder, a pain disorder associated with both psychological factors and chronic back pain, borderline intellectual functioning and a somatoform pain disorder. (*Id.*) At the third step of the sequential analysis, the ALJ found that the severity of Plaintiff's impairments had not met or equaled any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599. (*Id.*) The ALJ then found that Plaintiff had the residual functional capacity for light work. (R. at 452.) At step four, the ALJ determined that Plaintiff was able to perform his past relevant work as a construction worker. (R. at 454.) At step five, relying on the testimony of the VE, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 454-455.)

7.     On March 23, 1998, Plaintiff filed a request for review of ALJ Connor's decision.  (R. at 445.)  On December 12, 2000, the Appeals Council found no basis to grant Plaintiff's request for review.  (R. at 427-429.)  Hence, the March 18, 1998 decision of ALJ Connor became the final decision of the Commissioner for judicial review purposes.  Plaintiff filed this action on January 18, 2001, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

**Standard of Review**

8.     The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F. 2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F. 2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F. 2d 407, 414 (10th Cir. 1983) (citation omitted)).  A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record.  *See Gossett v. Bowen*, 862 F. 2d 802, 805 (10th Cir. 1988).

9.     In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *See Thompson v. Sullivan*, 987 F. 2d 1482, 1486 (10th Cir. 1993) (*citing* 42 U.S.C. § 423(d)(1)(A)).

10.     At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets

or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience.  *See id.*

**Administrative Record**

11.     On remand, Anthony C. Traweek, Ph.D. performed a psychological consultative examination on September 17, 1997.  (R. at 543-549.)  Dr. Traweek observed that Plaintiff was "somewhat fluent in English." (R. at 543.)  Plaintiff denied receiving mental health treatment.  (R. at 545.)  Plaintiff was alert, lucid and responsive at all times.  (R. at 546.)  He was oriented to person, place, time and situation.  (*Id.*)  His demeanor was cooperative, respectful, polite and differential. (*Id.*)  Thought processes were logical, goal directed, and coherent. (R. at 547.)  Thought content and perceptional ability appeared to be within normal limits, and there was no indication or preoccupations, illusions, ideas of reference, delusions, hallucinations, obsessions and compulsions, or neologisms.  (*Id.*)  Short term and intermediate memory were intact, but Plaintiff did report some memory deficits.  (*Id.*)  Intellectual functioning was estimated in the below average range.  (*Id.*) Concentration and mental control appeared good, and judgment and decision making appeared adequate.  (*Id.*)

12.     Plaintiff's speech was clear and understandable with a heavy Spanish accent.  (R. at 546.)  The pace of conversation was easy and spontaneous, with the exception of Plaintiff's hesitancy and delayed responses due to word searching and the inability to express himself in English.  (R. at 546-547.)  Although his primary language was Spanish, Plaintiff was able to comprehend spoken

English, and he was able to speak English sufficiently to engage in meaningful communication. (R. at 547.) Dr. Traweek stated that Plaintiff was unable to read and write in English. (*Id.*)

13.     Plaintiff described his mood as "okay," but Dr. Traweek detected low grade, chronic depression based on Plaintiff's reported social isolation, sleep disturbances, decreased concentration, support seeking behavior, worrying about his health, and sense of being overwhelmed.. (R. at 547.) Dr. Traweek administered the WAIS-R in English, but noted that Plaintiff's performance may have been enhanced with a Spanish version of the test. (R. at 548.) Plaintiff received a verbal IQ of 75, a performance IQ of 84 and an overall IQ of 79. (*Id.*) Dr. Traweek diagnosed depressive disorder, pain disorder associated with both psychological factors and chronic back pain, and borderline intellectual functioning. (R. at 548.)

14.     Dr. Traweek opined that Plaintiff would be able to follow work rules, relate to co-workers, use reasonable judgment, interact appropriately with supervisors, and function independently. (R. at 549.) However, due to chronic pain, Plaintiff would have difficulty maintaining attention, concentrating, and following complex instructions. (*Id.*) Plaintiff would be able to maintain appearance, behave in an emotionally stable manner, relate predictably and demonstrate reliability. (*Id.*) However, Dr. Traweek opined that Plaintiff would experience considerable difficulty in attempting to withstand the stresses and pressures associated with day-to-day independent work activity and the demands of employment. (*Id.*)

15.     At the February 18, 1998 hearing, Plaintiff testified in English. (R. at 468.) Plaintiff completed the eighth grade in Mexico and had taken a citizenship class in English at the Technical Vocational Institute in Albuquerque. (R. at 468-469.) Plaintiff became a United States citizen in 1997 by completing a written test in English. (R. at 470-471.) Plaintiff did not have any help taking

the citizenship test, and passed it the first time.  (R. at 471.)

16.    Plaintiff had been getting migraine headaches because he changed his medication  (R. at 476.)  Sometimes he felt "very depressing" due to his pain  (R. at 477-478.)  Plaintiff had a limited social life and was always in pain.  (R. at 479.)  Plaintiff had not received pain management treatment or counseling.  (R. at 481.)  However, at the time of the hearing, Plaintiff was living with a new girlfriend and was "very happy." (R. at 490.)

17.    The ALJ asked the VE to assume an individual with the same vocational characteristics as Plaintiff with the residual functional capacity for work activities in the light to sedentary exertional level.  (R. at 495-496.)  The ALJ then asked the VE to assume the individual was unable to engage in a detailed, complicated discussion in English.  (R. at 496-498.)  The VE testified that such a person could perform the jobs of kitchen helper, Mexican food maker and parking lot attendant.  (R. at 495-499.)

**Discussion**

18.    In support of his Motion to Reverse or Remand the Administrative Agency Decision, Plaintiff argues that the ALJ denied him due process and a fair hearing and that the Commissioner failed to carry his burden of proof at step five of the sequential evaluation process.

19.    Plaintiff asserts that the ALJ denied him due process and a fair hearing when she interrupted his cross examination of the VE.  The transcript reveals that the ALJ discussed the consultative reports and the scope of the remand order with Plaintiff's counsel during the hearing.  (R. at 499-509.)  The ALJ restated the issues for the VE and pointed out that the consultative psychologists were not qualified as vocational experts.  (R. at 500-504.)  The ALJ then invited Plaintiff's counsel to ask the VE questions about "gaps" in the consultative reports.  (R. at 504-505.)

After the issued had been clarified, the ALJ directed Plaintiff's counsel to "go ahead and finish" his cross examination. (R. at 408.) Plaintiff's counsel did in fact question the VE about the limitations set out in Dr. Enfield's report. (R. at 409.) In response, the VE testified that all the identified jobs would be eliminated. (*Id.*)

20.    On September 19, 1996, this Court remanded this matter to the Commissioner to conduct a step five inquiry into (1) Plaintiff's mental status in order to further assess Plaintiff's capacity to perform other work, and (2) to determine the impact of Plaintiff's sub-standard English skills on performing other jobs. *Galdean v. Chater*, CIV 95-1361 JP/WWD; (R. at 528.) On remand, Plaintiff underwent another consultative psychological evaluation. (R. at 543.)

21.    At the evidentiary hearing subsequent to remand, the ALJ provided a certified Spanish interpreter, but Plaintiff testified in English. (R. at 468.) The ALJ permitted Plaintiff's attorney to question Plaintiff about his mental impairment and ability to communicate in English. (R. at 467-480.) The ALJ herself then questioned Plaintiff about his mental impairment and his ability to communicate in English. (R. at 480-490). Furthermore, the ALJ called a VE, posed a series of hypothetical questions, and allowed Plaintiff's attorney to cross examine the VE.

22.    A claimant has a right to cross-examine vocational experts as a part of procedural due process. *Haddock v. Apfel*, 196 F. 3d 1084, 1090 (10th Cir. 1999). However, the role of cross-examination in disability proceedings is not unlimited. *Id.* In this case, the ALJ merely directed Plaintiff's counsel to confine his questions to the issues on remand and clarified the contents of the expert's reports. This was not error. The ALJ fully complied with this Court's Order of September 19, 1996. Plaintiff received due process and a fair hearing.

23.    Plaintiff argues that the Commissioner failed to meet his burden at step five. At step

five, the burden shifts to the Commissioner to prove that the claimant is not disabled. *See Miller v. Chater*, 99 F. 3d 972, 975 (10th Cir. 1996). In this case at step five, the ALJ relied on the testimony of a VE elicited though hypothetical questions. (R. at 492-495.) Plaintiff contends that the ALJ failed to fully incorporate Plaintiff's functional limitations into the hypothetical question posed to the VE. Hypothetical questions posed to a vocational expert need only reflect impairments and limitations supported by the record as found by the ALJ. *See Decker v. Chater*, 86 F. 3d 953, 955 (10th Cir. 1996).

24.     At the hearing, the ALJ presented hypothetical questions to the VE, setting forth an individual of Plaintiff's age, education, and work experience and describing the limitations she found credible and supported by the evidence. *Cf. Talley v. Sullivan*, 908 F. 2d 585,588 (10th Cir. 1990) (observing that a vocational expert's response to a hypothetical is not binding on the ALJ if the question sets forth impairments which the ALJ does not accept as true). The ALJ asked the VE to assume an individual with the same vocational characteristics as Plaintiff with the residual functional capacity for work activities in the light to sedentary exertional level. (R. at 495-496.) The ALJ then asked the VE to assume the individual was unable to engage in a detailed, complicated discussion in English. (R. at 496-498.) The VE testified that such a person could perform the jobs of kitchen helper, Mexican food maker and parking lot attendant. (R. at 495-499.)

25.     The ALJ posed hypothetical questions to the VE that adequately reflected the nature and severity of Plaintiff's impairments as borne out by substantial evidence in the record. Therefore, the ALJ's hypothetical questions were proper and the VE's opinion that a substantial number of jobs existed in the national economy which Plaintiff could perform is supported by substantial evidence.

26.     The ALJ established the VE's education and experience, questioned him appropriately,

and allowed Plaintiff's attorney the opportunity to cross-examine him. Under these circumstances, the testimony of the VE supplied substantial evidence of a significant number of positions which Plaintiff could perform and satisfied the Commissioner's burden at step five.

27.     The Commissioner's decision that Plaintiff is not disabled because he can return to her past relevant work is supported by substantial evidence and is in accordance with the law.

### RECOMMENDED DISPOSITION

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 9), filed August 27, 2001, be **DENIED**.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations any party may serve and file written objections to such proposed findings and recommendations. A party must file with the Clerk of the United States District Court, 333 Lomas NW, Albuquerque, NM 87103 any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**